DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The defendant-appellant Bradley A. Shelly appeals the judgment of the Medina County Court of Common Pleas. We affirm.
On April 23, 1996, Shelly was indicted on four counts: two counts of selling marijuana in an amount less than bulk in violation of R.C. 2925.03(A)(1), a felony of the fourth degree; one count of selling twenty unit doses of lysergic acid diethylamide ("LSD"), an amount equal to or exceeding the bulk amount but less than three times that amount, in violation of R.C.2925.03(A)(5), a felony of the second degree; and one count of selling two hundred unit doses of LSD, an amount equal to or exceeding three times the bulk amount, in violation of R.C.2925.03(A)(7). All of these charges stemmed from conduct which occurred on or before January 5, 1996.
Shelly waived his right to a jury trial. On January 28, 1997, upon Shelly's Crim.R. 29 motion, the trial court acquitted Shelly of one count of selling marijuana and of selling two hundred unit doses of LSD. On February 3, 1997, the court found Shelly guilty on count one (selling marijuana) and count two (selling twenty unit doses of LSD). The state had argued that as to count two, Shelly was guilty as an accomplice pursuant to R.C.2923.03. The court sentenced Shelly to six months imprisonment on count one and three to fifteen years on count two, to run concurrently, with three years actual incarceration. The trial court also suspended Shelly's driver's license.
Shelly moved the trial court to sentence according to Senate Bill 2, which became effective on July 1, 1996. On February 12, 1997, the trial court denied this motion. Shelly appeals, assigning three errors.
 I.
Shelly's first assignment of error states:
 APPELLANT'S CONVICTION ON COUNT TWO (2), THE SALE OF 20 UNIT DOSES OF LSD, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Shelly asserts in his assignment of error that his conviction is against the manifest weight of the evidence, yet in the body of his brief argues that the evidence was insufficient to establish guilt. We will address both concepts.
"Weight of the evidence" and "sufficiency of the evidence" are different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, 389. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340; see also State v. Johnson (1995), 107 Ohio App.3d 723, 726.
In Thompkins, supra, the Supreme Court of Ohio clarified the law regarding "manifest weight" and "sufficiency" determinations. The Court, stated:
 Weight of the evidence concerns the "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis sic.) Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Court further stated, "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., supra, quoting Tibbs v.Florida (1982), 457 U.S. 31, 42, 72 L.Ed.2d 652, 661. Nevertheless, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Messer (1995), 107 Ohio App.3d 51, 56. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily
against the conviction.'" Thompkins, supra, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
On the other hand, the test for "insufficient evidence" requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia (1979),443 U.S. 307, 319, 61 L.Ed.2d 560, 573; State v. Jamison (1990),49 Ohio St.3d 182, 191. "Sufficiency of evidence" is a term of art meaning the legal standard which is applied to determine whether the case may go to the trier of fact or support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "In essence, sufficiency is a test of adequacy." Id.
Shelly challenges the validity of his conviction on count two of the indictment for selling twenty unit doses of LSD in violation of R.C. 2925.03(A)(5). R.C. 2925.03(A)[1] provides in relevant part:
No person shall knowingly do any of the following:
* * *
 (5) Sell or offer to sell a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount[.][2]
LSD is a Schedule I controlled substance. R.C. 3719.41. R.C.2901.22 defines the culpable mental states in Ohio and provides in part:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
At the trial before the court, the state argued that Shelly was an accomplice pursuant to R.C. 2923.03, which provides in part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code[.]
* * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
Under Ohio law, the state may charge and try a defendant as a principal, and if the evidence at trial reasonably indicates that the defendant was an aider or abettor rather than a principal offender, the defendant may be found guilty under a complicity theory. See State v. Miller (Feb. 5, 1997), Summit App. No. 17776, unreported, at 5. Aiding and abetting implies more than the mere presence of a defendant during the commission of a crime. State v. Woods (1988), 48 Ohio App.3d 1, 6. To establish that a defendant aided or abetted, the state must show that the defendant incited, assisted, or encouraged the criminal act. Id.
At the trial, the only witness was Medina County Drug Task Force Agent Dennis Lowe, who testified to the following: On December 22, 1995, he was working undercover, along with a confidential informant ("CI"). Agent Lowe and the CI went to Shelly's residence. The CI entered the residence and asked Shelly if they could buy some acid. The CI went back to the vehicle that he and Agent Lowe had driven to Shelly's house. A few moments later, Shelly came out of the house and got in the back seat of the vehicle with Agent Lowe and the CI and directed them to a residence on Greenwich Road, which was the home of Jeffrey Garens. Agent Lowe testified that he was introduced to Shelly and knew him as "Brad Shelly" or "Brad," and that the informant knew him as "Brad." Agent Lowe then identified Shelly as the person who got into the car with him on December 22, 1995. Shelly told Garens that Agent Lowe and the CI wished to purchase LSD. Garens directed Agent Lowe, Shelly, and the CI to an upstairs bedroom to wait for the source of the LSD, Todd Goodson. When Goodson arrived, Shelly advised Goodson that Agent Lowe and the CI wished to purchase some LSD. When Agent Lowe stated that he wanted to buy "at least a half sheet, or fifty units," Goodson stated that he did not have that much. Goodson stated that he would sell twenty doses to Agent Lowe for $90.00. Agent Lowe gave Goodson $100.00 and Goodson gave Agent Lowe $10.00 in change. Agent Lowe and the CI then left Garen's residence. Shelly, however, remained at the residence.
In addition to Agent Lowe's testimony, the record reflects that the twenty unit doses of LSD purchased by Agent Lowe were introduced into evidence and that bills used in this transaction were "photocopied agency funds."
Reviewed in the light most favorable to the state, the evidence recited above is sufficient to satisfy the essential elements set forth in R.C. 2925.03(A)(5) (Trafficking) and2923.03(A) (Complicity). See State v. Kimble (March 29, 1993), Stark App. No. CA-9007, unreported. In addition, Shelly's conviction is not against the manifest weight of the evidence. The only evidence at trial was presented by the state, and we cannot say that the trial court clearly lost its way in finding that Shelly aided and abetted the sale of twenty unit doses of LSD to Agent Lowe.
Shelly's first assignment of error is overruled.
 II.
Shelly's second assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN REFUSING TO PROVIDE APPELLANT WITH THE BENEFIT OF A REDUCED PENALTY UNDER S.B. 2.
Shelly argues that S.B. 269 is an unconstitutional attempt to amend R.C. 1.58.[3] Am.Sub.S.B. 2 ("S.B.2") provides in part:
 Section 5. The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, imposed a term of imprisonment for an offense that was committed prior to that date.
 The provisions of the Revised Code in existence on and after July 1, 1996, apply to a person who commits an offense on or after that date.
Am.Sub.S.B. 269 ("S.B. 269") became effective July 1, 1996, providing in part:
 Section 3. That Section 5 of Am.Sub.S.B. 2 of the 121st General Assembly be amended to read as follows:
* * *
 Section 5. The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and, NOTWITHSTANDING DIVISION (B) OF SECTION 1.58 OF THE REVISED CODE, to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, imposed
IMPOSES a term of imprisonment for an offense that was committed prior to that date.
 The provision of the Revised Code in existence on and after July 1, 1996, apply to a person who commits an offense on or after that date.
R.C. 1.58(B) states:
 If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended[;]
This court has previously rejected an argument like Shelly's in finding S.B. 269 to be constitutional. We discussed the issue inState v. Yurchiak (Jan. 7, 1998), Medina App. No. 2684-M, unreported.
 This Court found that S.B. 269 is constitutional. See State v. Lawrence [Oct. 29, 1997, Summit App. No. 18298, unreported] at 7-9. But, see, State v. Toler [Sept. 19, 1997, Hamilton App. No. C-960835, unreported] * * * (deciding that S.B. 269 was an unconstitutional attempt to amend R.C. 1.58). In addition, the Sixth District Court of Appeals overruled a trial court's determination that S.B. 269 was an unconstitutional attempt to amend R.C. 1.58. State v. Mills (Aug. 29, 1997), Wood App. No. WD-97-012, unreported, 1997 Ohio App. LEXIS 3819, at *3. The Sixth District held that pre-S.B. 2 guidelines should be applied where the defendant committed a crime prior to July 1, 1996, but was sentenced after July 1, 1996. Id.
Id. at 4-5.
Based on the foregoing, we find that the trial court did not err in denying Shelly's motion for sentencing pursuant to S.B. 2. Shelly's second assignment of error is overruled.
 III.
Shelly's third assignment of error states:
 DEPRIVING APPELLANT OF THE BENEFIT OF A REDUCED SENTENCE UNDER S.B. 2 VIOLATES THE 8TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 § 9
OF THE OHIO CONSTITUTION'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT; AS WELL AS THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I §§ 2 AND 16 OF THE OHIO CONSTITUTION'S DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE.
 A. Cruel and Unusual Punishment
Shelly argues that his sentence of three to fifteen years for selling twenty unit doses of LSD is cruel and unusual punishment. We disagree.
Generally, a sentence that falls within the terms of a valid statute does not constitute cruel and unusual punishment.McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69. An amendment to that statute reducing the punishment for its violation does not render a more severe sentence, imposed under the former statute, cruel and unusual. Id.
 It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community.
Id.
When we compare Shelly's sentence with two sentences appealed to the United States Supreme Court, one of which was found to be cruel and unusual, and one of which was affirmed as not violative of the Eighth Amendment, we find that Shelly's sentence is not cruel and unusual punishment. In Harmelin v. Michigan (1991),501 U.S. 957, 115 L.Ed.2d 836, the United States Supreme Court held that a mandatory life sentence for possession of 650 grams or more of any mixture containing certain controlled substances does not violate the cruel and unusual punishment clause of United States Constitution. Id. at 994-996, 115 L.Ed.2d at 864-865. On the other hand, the Supreme Court found that a life sentence without the possibility of parole for writing a bad check (the defendant's seventh relatively minor nonviolent felony) did violate theEighth Amendment's prohibition against cruel and unusual punishment.Solem v. Helm (1983), 463 U.S. 277, 296-303, 77 L.Ed.2d 637,653-658, overruled by Harmelin, supra (stating that theEighth Amendment contains no proportionality guarantee).
Shelly was convicted of drug trafficking. He received a sentence within the terms of the statute applicable at the time he committed his offense. According to the terms of his sentence, Shelly must actually be incarcerated for three years, with a maximum of fifteen years. This was the punishment that the General Assembly saw fit to impose for drug trafficking at the time Shelly committed his offense. If a life sentence forpossession of a specified amount of a controlled substance is not cruel and unusual punishment, then a maximum fifteen year sentence for trafficking of a controlled substance is certainly not cruel and unusual punishment either.
 B. Equal Protection and Due Process
Confronted with an equal protection challenge to the application of the pre-S.B. 2 sentencing regime, this court has held that:
 A rational relationship to a legitimate governmental interest does exist in this case. The change in sentencing laws that gave rise to appellant's contentions in this case did not affect the sentence for the crime of grand theft alone. The legislature undertook a complete renovation of the sentencing laws in Ohio criminal law in order to further the public policy of protecting the public from crime by deterring others and by punishing offenders by making sentencing more accurate and certain. The state has a rational basis, therefore, for providing an effective date that gives the public ample opportunity to be informed of what the penalties will be for crimes committed after that date, and for preventing those who committed crimes before that date from seeking review of their sentences that were imposed before the changes took place. The classification of those who commit a crime before the effective date of the amended sentencing laws and those who commit the same crime after the effective date of the amending sentencing laws is therefore not in violation of equal protection.
State v. Ulrey (April 2, 1997), Lorain App. No. 96CA006610, unreported, at 3, quoting State v. Baxter (Feb. 21, 1997), Lucas App. No. L-96-093, unreported. Because the statutory classification of offenders bears a rational relationship to a legitimate government purpose, Shelly has not been denied due process or the equal protection of the law.
Shelly's third assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ LYNN C. SLABY
FOR THE COURT
SLABY, P. J.
CONCURS
[1] This was the version of statute that was in effect when Shelly committed the offenses for which he was convicted. R.C. 2925.03 has subsequently been amended by S.B. 166, effective October 17, 1996.
[2] "Bulk amount" is ten unit doses. R.C. 2925.01(E)(4). This refers to the statute in effect when Shelly committed the crime for which he was convicted.
[3] Section 15(D), Article II of the Ohio Constitution states in part:
 No law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections amended shall be repealed.