DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Silas M. Galmadez appeals his conviction in the Summit County Court of Common Pleas for rape. We affirm.
At the time of the offense, the victim, K, age 12, was living with her cousin Theresa Augustin ("Augustin") and Theresa's husband, Francisco Augustin. Galmadez came over to the Augustin residence in the early hours of August 5, 1996, after having celebrated Theresa's birthday with a group of friends. Several people in addition to Galmadez spent the night at the Augustin residence. The following morning, while the others remained asleep, Galmadez engaged in the conduct which became the subject of the charges in this case.
On October 16, 1996, Galmadez was indicted by a Summit County Grand Jury for rape by force or threat of force, a felony of the first degree. On October 28, 1996, a supplement to the indictment was filed, adding a second count: rape of a person less than thirteen years of age, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. On November 27, 1996, a second supplement to the indictment was filed, adding counts three and four: gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree; and felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b), a felony of the first degree.[1]
On December 9, 1996, the jury trial commenced on Count Two, contained in Supplement One to the indictment. On December 10, 1996, the jury found Galmadez guilty of the rape by force of K, a person under the age of thirteen when the offense was committed. On December 13, 1996, the trial court sentenced Galmadez to life imprisonment.[2]
Galmadez appeals and assigns four errors. We reaarange the sequence of these errors for ease of discussion.
 I.
Galmadez' second assignment of error states:
 THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUP[P]RESS THE STATEMENTS MADE TO DETECTIVE MATHEWS DURING AN INTERROGATION THAT TOOK PLACE ON OR ABOUT SEPTEMBER 26, 1996.
Galmadez argues that statements Galmadez made to police were obtained during a "custodial interrogation" and were admitted in violation of Miranda v. Arizona (1966), 384 U.S. 436,16 L.E.2d 694. We disagree.
Detective Edward L. Mathews of the Akron Police Department interviewed K on September 18, 1996. Detective Mathews was assigned to the juvenile bureau and was responsible for investigating allegations of physical and sexual abuse of children. On September 26, 1996, Detective Mathews followed Augustin to Galmadez' place of employment in Cleveland, Ohio. Detective Mathews introduced himself to Galmadez, showed him his identification, and told Galmadez that he wanted to speak with him about the August 5, 1996 incident in order to get Galmadez' "side of the story." Detective Mathews asked Galmadez to come out to his unmarked police vehicle. Galmadez sat in the front seat without handcuffs, leg shackles, or even a seat belt. Detective Mathews informed Galmadez that there were "no warrants issued for arrest, nobody was waiting to lock him up or anything like that." Detective Mathews did not inform Galmadez of his Miranda rights. Galmadez then made incriminating statements to Detective Mathews.
At one point during the conversation, Detective Mathews asked Galmadez for his Social Security number. Galmadez stated that he did not know the number, so Detective Mathews drove Galmadez to his home. Galmadez went into his house, retrieved his Social Security number, and got back into Detective Mathews' car. Detective Mathews then drove Galmadez back to his place of employment and told Galmadez he "was free to go."
Detective Mathews returned to Akron and spoke with the police legal advisor about his conversation with Galmadez. Warrants were issued for Galmadez' arrest. Galmadez was arrested on October 3, 1996, approximately one week after Detective Mathews questioned him outside his place of employment.
On November 6, 1996, Galmadez moved the trial court to suppress statements made to Detective Mathews. After an evidentiary hearing, the trial court denied this motion. "In reviewing a motion to suppress, an appellate court `is to determine whether the court's findings are supported by competent, credible evidence.'" State v. Stallings (July 13, 1994), Summit App. No. 16437, unreported, at 5, quoting State v. Self (1990),56 Ohio St.3d 73, 80.
The duty to advise a suspect of his Miranda rights does not arise until "questioning rises to the level of a `custodial interrogation.'" State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996), ___U.S. ___, 134 L.Ed.2d 221, citingState v. Roe (1989), 41 Ohio St.3d 18, 22, certiorari denied (1990), 494 U.S. 1060, 108 L.Ed.2d 774. "Custodial interrogation" involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona
(1966), 384 U.S. 436, 444, 16 L.E.2d 694, 706.
 [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of * * * [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.
Id.
Determining whether a suspect is in custody for purposes ofMiranda depends on the circumstances of each case. State v.Warrell (1987), 41 Ohio App.3d 286, 287. However, the "ultimate inquiry" is whether there was a "formal arrest" or "restraint on freedom of movement" to the degree associated with a formal arrest. Id., quoting California v. Beheler (1983), 463 U.S. 1121,1125, 77 L.Ed.2d 1275, 1279. "In making this determination, `the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." (Citation omitted.) Warrell, supra. Therefore, we apply an "objective, reasonable man standard" to the circumstances under which Galmadez' statements were given.
In its order denying Galmadez' motion to suppress, the trial court stated that:
 [T]he State has established by a preponderance of the evidence that the Defendant was not in custody when Det. Mathews questioned the Defendant, and further, that a reasonable person would have understood that he was free to leave. Applying the test in Berkemer[3], supra, and Gumm, supra, under the totality of the circumstances, a reasonable person would not have believed that he was not free to leave.
Detective Mathews told Galmadez that there was no warrant for his arrest. Detective Mathews did not force Galmadez to speak with him, and when Galmadez voluntarily did so, at no time did Detective Mathews restrain Galmadez. In fact, Detective Mathews drove Galmadez to his home and then drove him back to his place of employment. In addition, the conversation between Akron Detective Mathews and Galmadez took place in Cleveland, well outside of the jurisdiction of the Akron Police Department.
Upon review of the transcript of the suppression hearing, the motion to suppress and the trial court's order denying the motion, we cannot say that the trial court's denial was not supported by competent, credible evidence. A reasonable person in Galmadez' position would not believe he was not free to leave. Therefore, the requirements of Miranda did not attach to the conversation between Galmadez and Detective Mathews.
Galmadez' second assignment of error is overruled.
 II.
Galmadez' first assignment of error states:
 THE COURT'S VERDICT FINDING APPELLANT GUILTY OF RAPE OF A VICTIM UNDER THE AGE OF THIRTEEN BY FORCE OR THREAT OF FORCE, PURSUANT TO O.R.C. 2907.02 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT IT WAS UNSUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.
In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten
(1986), 33 Ohio App.3d 339, 340; see also State v. Johnson
(1995), 107 Ohio App.3d 723, 726.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court of Ohio clarified the law regarding "manifest weight" and "sufficiency" determinations. The Court stated:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis sic.) Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Court further stated, "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., quoting Tibbs v. Florida
(1982), 457 U.S. 31, 42, 72 L.Ed.2d 652, 661. Nevertheless, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v.Messer (1995), 107 Ohio App.3d 51, 56. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
On the other hand, the test for "insufficient evidence" requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia (1979),443 U.S. 307, 319, 61 L.Ed.2d 560, 573; State v. Jamison (1990),49 Ohio St.3d 182, 191, certiorari denied (1990), 498 U.S. 881,112 L.Ed.2d 183. "Sufficiency of evidence" is a term of art meaning the legal standard which is applied to determine whether the case may go to the trier of fact or support the verdict as a matter of law. Thompkins, 78 Ohio St.3d at 386. "In essence, sufficiency is a test of adequacy." Id.
R.C. 2907.02 provides in part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other to submit by force or threat of force.
 (B) Whoever violates this section is guilty of rape, a felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
Pursuant to R.C. 2907.01(A), "sexual conduct" includes vaginal intercourse between a male and a female and the insertion of any part of the body into the vaginal cavity of another. "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person[.]" R.C. 2901.01(A)(1), and "purposely" is defined as acting with a specific intention to cause a certain result or to engage in conduct of a certain nature, regardless of what the actor intends to accomplish thereby. R.C. 2901.22(A).
Fear of injury on the part of the victim is not necessary to a finding of force. State v. Birkman (1993), 86 Ohio App.3d 784,788. Neither is evidence of physically brutal force required.State v. Walker (June 11, 1997), Summit App. No. 17815, unreported, at 5. One acts with "force" when one prevents the victim from moving away from him. See Birkman, supra. In addition, "[t]he force * * * necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus. In the case of a child, "threat of force" may be shown by evidence which indicates that the will of the child was overcome. Id. at 59.
K testified that the rape took place in the bathroom of the Augustin residence. She stated that Galmadez had her "pinned, kind of cornered in between the sink and the bathroom," that Galmadez picked her "up on the sink," pulled her shorts down, put his "fingers inside of [her]," dropped his own pants, and put his "penis inside [her]." K was twelve years old at the time of the rape. Galmadez was twenty-two years old. In addition to K's testimony, the jury also heard the testimony of Detective Mathews. Detective Mathews testified that Galmadez admitted to him that he inserted his fingers and his penis into K's vagina.
On the stand, however, Galmadez denied putting his fingers or penis into K's vagina. He admitted only to touching K "inside her shirt" and "around between her legs" and to unbuttoning and unzipping his pants. Galmadez testified that the encounter ended when he heard "the noise, somebody, like, opened the outside door from the back and walk — like walk in — walks in the house[.]"
After reviewing the testimony, we cannot say that the jury clearly lost its way in determining that Galmadez, purposely and by force, compelled K, a twelve-year-old child, to engage in sexual conduct. The jury's verdict is supported by competent, credible evidence going to each essential element of rape. Reviewing the evidence in the light most favorable to the state, we cannot say that the jury could not have found Galmadez guilty of rape. Any conflicts in the evidence were reasonably resolved in favor of the state. Therefore Galmadez' first assignment of error is overruled.
 III.
Galmadez' third assignment of error states:
 THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION.
Galmadez' fourth assignment of error states:
 APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF DEFENSE COUNSEL HEREIN AS A RESULT OF COUNSEL'S FAILURE TO TIMELY REQUEST THE TRIAL COURT TO INSTRUCT THE JURY WITH RESPECT TO THE LESSER INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION.
 A. Jury Instructions
Galmadez argues that it was error for the trial court not to instruct the jury on the lesser-included offense of gross sexual imposition. R.C. 2907.05 sets forth the elements of "gross sexual imposition" and provides in part:
 (A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 (1) The offender purposely compels the other person * * * to submit by force or threat of force.
* * *
 (4) The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.
"Sexual contact" is defined as the "touching of an erogenous zone of another, including * * * the * * * pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Gross sexual imposition can be a lesser included offense of rape. Crim.R. 30 governs instructions to the jury and provides in part:
 On appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.
Failure to object to a jury instruction waives all but plain error. State v. Lundgren (1995), 73 Ohio St.3d 474, 493, certiorari denied (1996), ___ U.S. ___, 134 L.Ed.2d 222. A "plain error" is an error or defect that affects substantial rights and "may be noticed although [it was] not brought to the attention of the court." Crim.R. 52(B). An error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Campbell (1994), 69 Ohio St.3d 38,49, ceriorari denied (1994), 513 U.S. 913,130 L.Ed.2d 204; State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. "`The plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice[.]'"Id. at 95, quoting United States v. Rudinsky (C.A. 6, 1971),439 F.2d 1074, 1076.
At his trial, Galmadez testified on his own behalf. Galmadez insisted that he touched K's breasts and genital area, but insisted that he did not have sex with her. However, Galmadez had previously admitted to Detective Mathews to having had sexual intercourse with K, but insisted that it was consensual. K testified that Galmadez had pinned her in the bathroom, set her up on the sink, and then inserted his fingers and penis into her vagina. The evidence was overwhelming that Galmadez, by force or threat of force, compelled K to engage in "sexual conduct," not merely "sexual contact," with him. Therefore the trial court's failure to instruct on the lesser included offense of gross sexual imposition was not plain error.
Galmadez' third assignment of error is overruled.
 B. Ineffective Assistance of Counsel
In order to establish a claim for ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance fell below an objective standard of reasonable representation, and (2) that he was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990),497 U.S. 1011, 111 L.Ed.2d 768. Because evaluating counsel's performance is so inherently difficult, we must presume that his or her conduct falls within "the wide range of reasonable professional assistance." State v. Mitchell (Sept. 3, 1997), Summit App. No. 18369, unreported, at 3, quoting Bradley, supra, at 142. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. Mitchell, supra, at 3.
While "[t]he record may reveal that trial counsel did not request a certain jury instruction, * * * without more[,] the court of appeals would have to guess as to why trial counsel did not make the request." State v. Griffie (1996), 74 Ohio St.3d 332,333. "Failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." Id.
Even if Galmadez were to show that his counsel's performance fell below the objective standard of reasonableness, we have already determined that there was no prejudice to Galmadez by the trial court's failure to instruct on the lesser-included offense of gross sexual imposition. Therefore, Galmadez cannot prove prejudice, the second prong of the test for ineffective assistance of counsel set forth in Bradley, supra.
Galmadez' third and fourth assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
QUILLIN, J., P. J.
REECE, J. CONCUR
[1] This section has been subsequently repealed.
[2] On December 13, 1996, Galmadez pled guilty to gross sexual imposition. Count Four, felonious sexual penetration, was dismissed. Galmadez received an eighteen-month sentence on this count.
[3] Berkemer v. McCarty (1984), 468 U.S. 420, 442,82 L.Ed.2d 317, 336 (holding that a determination of whether a particular individual was "in custody" does not depend on the subjective analysis of either the questioner or the person being questioned).