STRATTMAN, APPELLANT, *v.* STUDT, SUPT., CINCINNATI WORKHOUSE, APPELLEE.

[Cite as Strattman v. Studt, 20 Ohio St. 2d 95.]

(No. 69-381—Decided December 17, 1969.)

Mr. *Allen Brown* and Mr. *David L. Sterling,* for appellant.

Mr. *William A. McClain,* city solicitor, Mr. *Ralph E. Cors* and Mr. *William B. Singer,* for appellee.

DUNCAN, J. With respect to the fine, the questions to be decided are whether Section 2947.20, Revised Code, which permits incarceration for nonpayment, denies an indigent equal protection of the laws; and whether there is an abuse of discretion where a trial court imposes a fine which, in effect, confines an indigent longer than the maximum sentence authorized by the statute or ordinance violated.

In deciding those questions, we must consider the implications our decision will have upon our established systems of penal fines and imprisonment for nonpayment of fines. We must, in addition, remember the doctrine of equal protection for indigents, as stated in *Griffin* v. *Illinois,* 351 U. S. 12.

It is with awareness of these caveats that we consider whether or not Section 2947.20, Revised Code, as applied to the facts at bar, violates petitioner's guarantee of equal protection of the laws. Statutes are capable of violating equal protection in three ways: (1) A statute may be discriminatory on its face;[3] (2) though fair on its face, a statute may be applied in a discriminatory manner;[4] and (3) a statute can violate equal protection because, as in

[3]See *Brown* v. *Board of Edn. of Topeka,* 347 U. S. 483 (statutes permitting or requiring segregation). See, also, *McLaurin* v. *Oklahoma State Regents,* 339 U. S. 637.

[4]*Yick Wo* v. *Hopkins,* 118 U. S. 356; *Hernandez* v. *Texas,* 347 U. S. 475; *Fowler* v. *Rhode Island,* 345 U. S. 67.

*Griffin*, the effect of its application causes results which depend upon the solvency of criminal defendants. Herein, we are concerned with a *Griffin* type discrimination.[5]

We hold that Section 2947.20, Revised Code, as applied to an indigent defendant who has served the maximum incarceration authorized by the substantive statute, violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. Our reasoning combines an interpretation of the legislative intent in the enactment of Section 2947.20, Revised Code, and a determination of whether the credit sum of three dollars per day, provided by that section, is reasonable.

In construing statutes almost identical to Section 2947.20, some courts have determined the legislative intent in enacting such laws to be for the single purpose of providing the court with a means to coerce payment of a fine from an unwilling but able-to-pay criminal. See *People* v. *Saffore,* 18 N. Y. 2d 101, 218 N. E. 2d 686 (construing Section 484, New York Code of Criminal Procedure), and *In re Fil Ki,* 80 Cal. 201, 22 P. 146 (construing Section1205, Penal Code of California).

Other courts have construed such statutes to have a dual purpose which combines the above single coercive purpose with the additional objective of giving the state a method of *obtaining payment* of a fine from one who is unable to pay. This method contemplates working off the fine during incarceration. *People* v. *Jaraslowski,* 254 Ill. 299, 98 N. E. 547.

Judge Cardozo strongly implied this idea when he said that ''the state when it punishes misdemeanors by fine, is not confined to the dubious remedy of a civil action for a penalty.'' *Chapman* v. *Selover,* 225 N. Y. 417, 421, 122 N. E. 206. Although this dual-purpose concept is no longer a part of the legal philosophy of New York, it was followed by the Supreme Court of Illinois in *People* v. *Jaraslowski, supra* (254 Ill. 299), cited as controlling in *People* v. *Williams,* 41 Ill. 2d 511, 244 N. E. 2d 197.

---

[5]*Williams* v. *Oklahoma City,* 89 S. Ct. 1818, and the numerous cases cited therein which are an outgrowth of the *Griffin* analysis.

Adoption of the single-purpose concept, as in New York and California, when statutes or ordinances do not provide for confinement, results, in the convicted indigent escaping without punishment because in theory the statute providing for confinement for failure to pay was not intended to apply to him. The single-purpose concept also gives rise to the basic premise of those cases which hold that a court abuses its discretion by fining an indigent and sentencing him to the maximum prison term, when the effect of the fine will be to incarcerate the indigent beyond the term authorized by the substantive statute. *In re Petition of Cole, supra* (17 Ohio App. 2d 207); *People* v. *Saffore, supra* (18 N. Y. 2d 101); and *Sawyer* v. *District of Columbia* (D. C. C. A.), 238 A. 2d 314, are cases which expressly or impliedly lead to this result. We believe the fallacy of that basic premise can lead to a result which denies equal protection to one who can pay, while the indigent goes unpunished.

Therefore, we are constrained to find that the dual-purpose concept is more compelling. We are persuaded not only by the conclusion that the single-purpose concept denies equal protection, but also by a consideration of the common law as to fines and the consequences of nonpayment.

The idea of paying fines to the state originated sometime in the 11th century when a criminal paid a *wite* to the king as part of his punishment. See 2 Pollock & Maitland, History of English Law (2 Ed.), 448-451. History also reveals that most people who were unable to pay the *wite* were sold into slavery, presumably to repay the purchaser by labor. See *id.*, at 460, 516. Incarceration until the fine was paid was a moderation of the slavery penalty and its primary aim was to secure payment in a more civilized manner. Cf. *id.*, at 464, 518. Nevertheless the thrust of the original idea was that a man should work out his fine.

Consideration of Section 2947.15, Revised Code, persuades us that, in enacting Section 2947.20, Revised Code, the General Assembly had in mind the dual-purpose concept. Section 2947.15 provides that "persons committed

to jail * * * for nonpayment of fine or costs * * * *shall* perform labor * * *." (Emphasis added.) That statute's mandatory command, and its contiguity to Section 2947.14, Revised Code (a statute almost identical to Section 2947.20), indicates to us that an overall procedure for working off a fine was intended when a person was unable to pay.

Any interpretation of Section 2947.20, Revised Code, that on an equal-protection basis allows a convicted indigent defendant immunity from fines, under statutes or ordinances which do not provide for confinement, must also take into consideration that such indigent would in those instances be free from the criminal sanction. Such a consequence can follow from the holdings in *Sawyer* v. *District of Columbia, supra* (238 A. 2d 314) ; *In re Petition of Cole, supra* (17 Ohio App. 2d 207) ; and *People* v. *Saffore, supra* (18 N. Y. 2d 101). The dual-purpose concept eliminates this problem.

Under the dual-purpose concept, the effect of Section 2947.20, Revised Code, is to give the solvent criminal a choice between paying the fine and working it off at three dollars per day. If he chooses not to pay, he makes an independent judgment that a day of his freedom is only worth three dollars, and he voluntarily accepts the penalty. Of his own free will he has equated three dollars with a day in jail.

The indigent, however, has no choice. As Mr. Justice Goldberg said, "the 'choice' of paying * * * [a] fine or spending * * * days in jail is really no choice at all to a person who cannot raise * * * [the fine]." Goldberg, Equality and Government, 39 N. Y. U. L. Rev. 205, 221. The indigent is able to decide whether three dollars is equal to a day in jail but he is unable to manifest his choice. Because of that inability, a law which requires an indigent to work off a fine, must reasonably equate the amount of work required and the dollar amount of the fine so as not to offend our legal tradition of fundamental fairness.

In today's society, no one, in good conscience, can contend that a nine-dollar fine for crashing a stop sign is deserving of three days in jail if one is unable to pay. The ef

fect of Section 2947.20, when applied to the indigent, denies him equal protection and punishes him much more severely merely because he is unable to pay.

It is our judgment that three dollars per day credit on an unpaid fine is so unreasonable that it unfairly discriminates against the indigent.

We recognize that a court need not invoke the sanctions of Section 2947.20, Revised Code, because it is discretionary. However, to say that the problem can be solved, and constitutional objections avoided, merely by saying that a court should never use Section 2947.20 for indigents is objectionable, and is rejected. We believe that there is some per diem rate which is capable of comporting with fundamental fairness and equating a day in confinement with the credit of a dollar amount. This is a legislative question.

Court costs were also assessed against the defendant. We assume that they are unpaid, and that the defendant is subject to additional incarceration under Section 2947.-20, Revised Code, because of this failure to pay the costs. A court has discretion to order imprisonment for failure to pay costs in the same manner as for failure to pay a fine. The constitutional infirmity existing in Section 2947.20, regarding fines, as discussed above, obviously is present as related to costs. But a major distinction between fines and costs exists. In both criminal and civil cases, costs are taxed against certain litigants for the purpose of lightening the burden on taxpayers financing the court system. As we view it, statutory provisions for payment of court costs were not enacted to serve a punitive, retributive, or rehabilitative purpose, as are fines.

An indigent person taxed with costs in a civil action is not jailed to work off this obligation. Section 15, Article I of the Ohio Constitution, expressly prohibits imprisonment for civil debt.[6] In criminal cases, court costs, assessed

---

[6]Section 15, Article I of the Ohio Constitution, provides:
"No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud."

to defray the administrative costs of the litigation, are likewise subject to the same prohibition. The purpose of assessing costs in criminal and in civil cases is the same, and there is no justification for imprisonment for nonpayment of costs in criminal cases but not in civil cases.

By being involved in court proceedings, any litigant, by implied contract, becomes liable for the payment of court costs if taxed as a part of the court's judgment. A judgment for costs in a criminal case is a civil, not a criminal, obligation, and may be collected only by the methods provided for the collection of civil judgments. To hold otherwise would permit that which is constitutionally prohibited. As this court stated in 1900, "money obligations arising upon contract, express or implied, and judgments rendered thereon, are debts within the purview of Section 15 of the [Ohio] Bill of Rights * * *." *Second National Bank of Sandusky* v. *Becker*, 62 Ohio St. 289 (paragraph one of the syllabus).

Thus, while a government can require that a fine be worked off at a reasonable rate, because of its punitive, retributive, and rehabilitative interest in the person fined, it cannot require confinement to work off court costs in order to satisfy its contractual interest.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court, with instructions to allow the writ.

*Judgment reversed.*

MATTHIAS, O'NEILL and HERBERT, JJ., concur.

TAFT, C. J., concurs in paragraphs one, three, six, seven and eight of the syllabus and in the judgment.

SCHNEIDER, J., concurs in paragraphs one, two, three, six, seven and eight of the syllabus and in the judgment.

CORRIGAN, J., concurs in the judgment only.

TAFT, C. J., concurring. I agree with the apparent conclusion of the majority that, by providing a credit against a fine of only three dollars per day of confinement,

Section 2947.20, Revised Code, now provides an unreasonably inadequate monetary allowance for such confinement. I say "now" because that allowance, together with the cost of feeding and housing a prisoner, may have represented a fair allowance when it was legislatively provided for in 1943. However, it is no longer adequate because of the diminished value of today's dollar.

It seems to me that this unreasonably inadequate monetary allowance as a credit on a fine makes Section 2947.20, Revised Code, invalid because it deprives a person confined thereunder "of * * * liberty * * * without due process of law," contrary to the Fourteenth Amendment to the Constitution of the United States.

If the state takes property from its owner and pays him an inadequate amount of compensation therefor, it is obvious that the state thereby deprives the owner of his property without due process of law. Likewise, under Section 2947.20, Revised Code, if the state takes the liberty of the person convicted and fined in order to collect its fine, in making an inadequate allowance for that liberty, it thereby deprives that person of his liberty without due process of law.

The "equal protection" rationale of *Griffin* v. *Illinois* (1956), 351 U. S. 12, does suggest an attractive basis for sustaining the contention of this indigent relator that he cannot be confined pursuant to Section 2947.20, Revised Code.

However, if the equal protection reasoning of that decision is used as the basis for preventing confinement under Section 2947.20, Revised Code, of only those who are indigent, then confinement thereunder of a defendant who is not indigent will necessarily deny him protection of the laws equal to that given an indigent defendant.

Furthermore, subsequent pronouncements of the Supreme Court of the United States have indicated a recognition that the decision in *Griffin* v. *Illinois, supra,* should be considered as based upon the due process requirement of a fair trial, including, where an appeal is provided, one in which the defendant is represented by counsel who is

provided with what he needs to make that appeal. See, for example, *Linkletter* v. *Walker* (1965), 381 U. S. 618, at 639 (Mr. Justice Clark); *Tehan* v. *Shott* (1966), 382 U. S. 406, at 416 (Mr. Justice Stewart); *Johnson* v. *New Jersey* (1966), 384 U. S. 719, at 727 and 728 (Mr. Chief Justice Warren); and *Stovall* v. *Denno* (1967), 388 U. S. 293, at 297 and 298 (Mr. Justice Brennan).

Hence, I disagree with the majority opinoin to the extent that it uses the equal protection reasoning of *Griffin* v. *Illinois, supra,* to sustain its conclusions.

SCHNEIDER, J., concurs in the foregoing concurring opinion.

CORRIGAN, J., concurring in the judgment only. The question we have for determination in this appeal is whether a convicted, indigent accused, after serving the maximum term of imprisonment imposed for the commission of a misdemeanor, can be required to serve out a fine and costs at the rate of three dollars ($3.00) per day, where the sentencing court knows that the accused is without funds or other property.

Petitioner, Walter Strattman, received a sentence of six months in the workhouse and a fine of five hundred dollars ($500) upon conviction of violating Section 901-f3 of the Code of Ordinances of the City of Cincinnati for making a false police report. After serving the six-month sentence, petitioner was unable to pay the fine and filed a pauper's affidavit with the Municipal Court of Hamilton County, where he was found guilty, but his confinement was continued until the fine was paid at the rate of three dollars ($3.00) per day, as provided for by Section 2947.20, Revised Code.

On April 22, 1969, petitioner filed a petition for writ of habeas corpus in the Court of Appeals for Hamilton County. The writ was denied and the Court of Appeals certified the record to this court as being in conflict with the case of *In re Petition of Cole,* 17 Ohio App. 2d 207, decided by the Court of Appeals for Cuyahoga County.

After the case was docketed, petitioner moved this court to set bond, which was granted and petitioner was released on bond pending the decision in this appeal.

Two propositions of law are advanced in support of petitioner's position that he is entitled to have the writ of habeas corpus granted. I consider only the first, for the purpose of this concurrence, which is stated in petitioner's brief as follows:

"A maximum term of imprisonment and a maximum fine imposed by a trial court on a defendant who is indigent and who must necessarily work off the fine by a further term of incarceration deprives him of due process of law and the equal protection of the laws in violation of Section 1 of the Fourteenth Amendment to the United States Constitution."

The apparent purpose of Section 2947.20, Revised Code, is to enforce the collection of fines and costs. However, when that section is applied in the case of an indigent it serves only to impose additional imprisonment. This additional imprisonment follows solely and automatically as a result of petitioner's inability to pay. If petitioner had financial means, he would have a choice between paying or serving out the time. Due to his poverty he is denied this chance. His is the poor man's "Hobson's choice"; he must serve additional time—at the rate of three dollars per day. Thus, petitioner is not afforded the same treatment as is a person who is financially able to pay or make provision for paying the fine and costs.

Equal protection of the laws comprehends that all persons shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. Discrimination which is based upon a man's financial means is out of keeping with the traditions of fair play and equal justice which we have long sought to maintain. As Justice Black stated in *Griffin* v. *Illinois*, 351 U. S. 12, 17:

"* * * Both equal protection and due process emphasize the central aim of our entire judicial system—all people

charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' * * *.

"* * * In criminal trials a state can no more discriminate on account of poverty than on account of religion, race, or color. * * *"

Therefore, I would hold that the unequal treatment imposed upon appellant in this case constitutes a denial of his right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution. See *People* v. *Saffore*, 18 N. Y. 2d 101, 218 N. E. 2d 686.

Comparable instances of discriminatory practices based upon a person's poverty have been condemned by the Supreme Court of the United States. *Griffin* v. *Illinois,* *supra* (351 U. S. 12); *Burns* v. *Ohio*, 360 U. S. 252; *Gideon* v. *Wainwright*, 372 U. S. 335.

Thus, in my view, the commitment under Section 2947.20, Revised Code, of a person to jail or workhouse until he pays or serves out his fine and costs, where the person has already served the maximum substantive sentence of days provided by the ordinance under which he was convicted, is a denial of equal protection of the laws in a case where the person so committed is indigent and, because of such indigency, is unable to pay the fine and costs for which the commitment is made.