[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Richard Cochran appeals from a judgment of conviction in the Clark County Court of Common Pleas. Cochran pleaded guilty to two counts of aggravated trafficking in cocaine and one count of permitting drug abuse. The trial court sentenced him to five years of confinement, suspended his driver's license for three consecutive one-year terms, and imposed a fine of $6,500. The court suspended Cochran's term of imprisonment and placed him on probation for five years. Cochran violated the terms of his probation, however, and the trial court reinstated his prison sentence.
On appeal, Cochran contests the validity of both his conviction and the penalties imposed. After reviewing Cochran's assignments of error, we conclude that the trial court erred by imposing consecutive driver's license suspensions. We find further that Cochran's trial counsel provided inadequate assistance in failing to file an affidavit of indigency before Cochran's prison sentence was reinstated, so that Cochran could avoid the fines imposed on him. Otherwise, we find no error and affirm the judgment of the trial court.
 I.
Appellee, the State of Ohio, has not seen fit to provide this court with an appellate brief. Consequently, under App.R. 18(C), we accept the appellant's statement of facts as true. As stated in appellant's brief, the facts of his case are as follows.
On June 19, 1995, the Grand Jury of Clark County, Ohio returned a seven count indictment against appellant, Richard Cochran, and a co-defendant, Crystal Moore. Counts Four through Six were leveled against Cochran. Count Four charged that he permitted drug abuse to occur in violation of R.C. 2925.13, with the specification that the crime occurred within one thousand feet of a schoolyard. Counts Five and Six charged him with trafficking cocaine in an amount less than bulk, with specifications for a prior violent-crime conviction and for operating within one thousand feet of a schoolyard.
On August 30, 1995, Cochran appeared in court for the disposition of his case, represented by a public defender. He entered a plea of guilty to Count Four, a felony of the fourth degree, and to Counts Five and Six, two felonies of the third degree. On October 20, 1995, the trial court imposed the following sentence: a term of imprisonment of one year on Count Four, two years on Count Five, and two years on Count Six, all terms to be served consecutively. The court suspended the prison sentence for a probation period of five years. The trial court also assessed mandatory fines on each count totaling $6,500 and ordered Cochran to pay restitution of $55. The terms of Cochran's probation required him to pay his fines in monthly installments of $115. Finally, the court ordered that Cochran's driver's license be suspended for three consecutive terms of one year, one term for each count in his conviction.
On November 28, 1995, Cochran appeared before the court with counsel to answer an application to revoke his probation. Cochran admitted to two of the three violations alleged in the application. The third charge was withdrawn. As a consequence of the violation, the court revoked probation and reinstated the original aggregate term of five years of imprisonment. An order to this effect was entered on December 13, 1995.
On May 16, 1997, Cochran filed a motion for leave to file a delayed appeal, which was granted on June 20, 1997.
 II.
In his first assignment of error, Cochran contends that:
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY IMPOSING THREE ONE YEAR DRIVER LICENSE SUSPENSIONS AND RUNNING THE SUSPENSIONS CONSECUTIVELY.
 Cochran received a term of suspension on his driver's license for each count in his conviction. The trial court imposed two one-year terms for trafficking under R.C. 2925.03(M) and a one-year term for permitting drug abuse under R.C. 2925.13(E).[1]
The court ordered that the suspensions run consecutively.
In State v. Phinizee (July 5, 1996), Clark App. No. 95-CA-54, unreported, this court, considering a similar penalty, held that a trial court could not impose consecutive suspensions under R.C.2925.03(M). In that case, the defendant received four consecutive five-year suspensions after his conviction on four counts of drug trafficking against R.C. 2925.03. Id. at 2. Reviewing the propriety of that penalty, we noted that sections of the Revised Code defining penalties must be strictly construed against the state and in favor of criminal defendants. R.C. 2901.04(A). Thus, we reasoned, a trial court has no authority to run suspensions consecutively unless there is express statutory authority to do so. Id. at 5. Because no such provision exists within 2925.03(M), we modified the penalty so that the terms would run concurrently.
Although one of Cochran's suspensions arose under R.C.2925.13(E), the logic of the Phinizee opinion still applies. The terms of R.C. 2925.13(E) are very similar to those of R.C.2925.03(M). Neither provision expressly grants courts the authority to impose consecutive license suspensions. Consequently, we find that the trial court lacked the authority to order that Cochran's three driver's license suspensions run consecutively. The appellant's first assignment of error is sustained.
 III.
Cochran raises as his second assignment of error the following:
 APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE IN THAT APPELLANT'S TRIAL COUNSEL DID NOT FILE AN AFFIDAVIT OF INDIGENCY AND/OR DID NOT MOVE THAT APPELLANT'S FINES BE SUSPENDED
 Cochran was levied the $2,500 mandated by R.C. 2925.03(H)(4) for each of two counts of aggravated trafficking, or a total of $5,000. He was also fined $1,500 as required by R.C. 2925.13(D)(1) for permitting drug abuse.[2] Thus, the aggregate of his fines equaled $6,500.
Cochran's relies on R.C. 2929.14(C) for his first argument in support of overturning these fines. He claims that error resulted from the trial court's failure to abide by the terms of R.C.2929.14 that forbid a court from imposing a fine on an offender who will be unable to pay. Both R.C. 2925.03(H) and2925.13(D)(1), however, designate that the fines they require are mandatory and must be imposed "notwithstanding section 2929.14 of the Revised Code." This argument, therefore, is without merit.
In his second argument, Cochran asserts that he was indigent at the time of his sentencing. Thus, he claims, his trial counsel should have filed an affidavit of indigency, pursuant to the terms of R.C. 2925.03(L) and 2925.13(D)(5), in order to avoid the mandatory fines. Because, his attorney failed to act, Cochran argues, he was deprived of adequate assistance of counsel.
One of these cited statutory divisions, R.C. 2925.03(L), provides as follows:
 No court shall impose a mandatory fine pursuant to division (H) of this section upon an offender who alleges, in an affidavit filed with the court prior to his sentencing, that he is indigent and is unable to pay any mandatory fine imposed pursuant to that division, if the court determines that the offender is an indigent person and is unable to pay the fine.
 The other provision, R.C. 2925.13(D)(5), is nearly identical to the foregoing. Other, nearly identical provisions occur throughout Chapter 2925. See, e.g., R.C. 2925.02(D)(5); 2925.11(E)(5); 2929.12(D)(5); 2925.14(G)(5). Recently, in State v. Gipson (1998), 80 Ohio St.3d 626, the Supreme Court of Ohio engaged in interpretation of one of these provisions, R.C. 2925.11(E)(5). Reasoning from that opinion, we see no defect in trial counsel's performance arising from a failure to file an affidavit prior to the filing of the original sentencing decision.
 Gipson involved a criminal defendant who failed to properly file his affidavit of indigency before his sentence was handed down. 80 Ohio St.3d at 627. The trial court suspended the defendant's prison sentence and placed him on probation. Id. at 628. It also imposed a mandatory fine of $1,500 and ordered the defendant to pay it, either in cash or community service, at the rate of $200 per month. Id. The Supreme Court determined that the above-quoted statutory language requires a criminal defendant to file his affidavit before a court may consider whether indigency prevents the defendant from paying the fine. Id. at 633. Moreover, the Court held that, in order to trigger the review mandated by the statute, the defendant's affidavit must be filed with the clerk before the court's journal entry indicating the sentence is filed. Id. at 632. Because the defendant had not properly filed his affidavit, the Court found no error in the imposition of the mandatory fine. Id.
In the instant case, Cochran's trial attorney did not file the affidavit required under R.C. 2925.03(L) and 2925.13(D)(5). Thus, under the rule of Gipson, the court did not err in imposing the fines as it did. Nevertheless, this holding from Gipson would not prevent us from finding that counsel failed to provide adequate assistance in neglecting to file an affidavit of indigency. When a criminal defendant can show that his counsel's performance was deficient and that the deficient performance was prejudicial to his case, there is constitutional error.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Thus, even if the trial court did not err in imposing the fine, we must consider whether counsel's failure to file an affidavit caused a prejudicial result. A number of Ohio courts have recognized that failure to file an affidavit of indigency, under the right circumstances, can constitute prejudicial error. E.g., State v. Mendoza (July 14, 1995), Lucas App. No. L-94-242, unreported, at 3; State v. Joy
(Nov. 24, 1993) Lawrence App. Nos. 92 CA 24, 92 CA 30, unreported, at 3; State v. Creech (June 29, 1993), Scioto App. No. 92 CA 2053, unreported, at 6.
In the Gipson opinion, however, the Supreme Court went on to consider whether the fine levied by the trial court, structured so that the defendant could pay it over the course of his probation, would have been proper even if the defendant had filed a proper affidavit of indigency Id. at 634. The Court looked again to the statutory language and noted that the statutes only forbid imposing the mandatory fines when the trial court finds that an offender is an indigent person and he is unable pay the fine. Id.
Thus, the Court reasoned, even a defendant who is presently indigent may be able to pay the fine if permitted to do so over the course of his probation. Id. Although unemployed, the defendant in Gipson was able-bodied and actively seeking employment. Moreover, he was given the option to settle his fine through community service. Id. Under such circumstances, the Court found, a trial court would not err in imposing the mandatory fine. Id.
In the instant case, at the time of sentencing, Cochran informed the trial court that he was currently employed. The conditions of his probation only required monthly payments of $115. Following the Gipson Court's reasoning, we find clear indication in the record that Cochran was able to pay the mandatory fines at the time of his sentencing. Trial counsel should never be required to file an affidavit in which his client alleges an inability to pay, if counsel knows that his client, in fact, has the ability to pay. See State v. Powell (1992),78 Ohio App.3d 784, 787. Thus, In not filing an affidavit before the original sentencing, trial counsel's performance was neither deficient nor prejudicial.
Cochran further alleges, however, that his counsel was deficient in not moving to have the fine suspended when his sentence was reimposed. With this argument, we face the difficult circumstance of what happens when a trial court revokes probation on a criminal defendant whose ability to pay mandatory fines was contingent on his being able to work during his probation. By the strict terms of R.C. 2925.03(L) and 2925.13(D)(5), it might appear too late for the defendant to submit an affidavit and have the court consider his ability to pay.
We note, however, that when revoking probation a trial court has the power to modify its sentence under R.C. 2951.09. In Statev. McMullen (1983), 6 Ohio St.3d 244, 246, the Supreme Court stated that "a defendant has no expectation of finality in the original sentence when it is subject to his compliance with the terms of his probation. In the event of a violation of probation, the original sentence does not become final but is subject to modification within the standards of state law." The McMullen
Court concluded that this lack of finality permits a trial court to impose on the violator a longer sentence than the one originally imposed. Id. In a probation revocation hearing, when a sentence is not final in other respects, there is little logic in treating the sentence as final for the purposes of R.C.2925.03(L) and 2925.13(D)(5). Given the power of a court to impose a harsher sentence during the revocation hearing, we find that an affidavit submitted before sentence is reimposed at a revocation hearing is submitted "prior to sentencing" for the purposes avoiding a mandatory fine.
Both logic and practicality compel us to reach this interpretation. Following Gipson, there are likely to be a number of probationers whose ability to pay mandatory fines is contingent on their ability to earn a wage. Unfortunately, some of those probationers, like Cochran, will violate the terms of their probation and be incarcerated as a result. Although these offenders will be precluded from claiming inability to pay prior to receiving probation, many will, in fact, be unable to pay after their sentences are reimposed and they are incarcerated. SeeState v. Gutierrez (1994), 95 Ohio App.3d 414, 418 (holding that a trial court abuses its discretion in imposing a mandatory fine where the defendant's incarceration prevents him from paying). Too strict an interpretation of the mandatory fine provisions would give these criminal defendants no opportunity to prove their indigency.
Furthermore, after an offender whose ability to pay depends on his ability to work is imprisoned, the mandatory fine against him, as a practical matter, becomes unenforceable. Any attempt to enforce the fine would trigger the review process required by R.C.2947.14. That statute requires a court to conduct a hearing on the offender's ability to pay before the court may punish the delinquency. See State v. Johnson (1995), 107 Ohio App.3d 723,728-29. R.C. 2947.14 only permits the court to commit an offender who is "able, at that time, to pay the fine but refuses to do so." Thus, even if the law did not permit an offender to file an affidavit of indigency before a revocation hearing, to avoid the mandatory fines, the offender need only refuse to pay and wait for the sentencing court to attempt enforcement. He could then prove his inability to pay at the satisfaction hearing required by R.C.2947.14.
We expect that, if R.C. 2947.14 were the only procedure for avoiding fines for probation violators like Cochran, many mandatory fines would be consigned to a legal limbo in which no court bothers to enforce them and no offender bothers to pay them. Even in that situation, indigent prisoners will serve their terms of imprisonment with these fines hanging over them and without any ability to pay them. Procedural practicality favors a system in which the offender can move to avoid the fine at a reasonable time rather than ignoring the court's judgment and waiting for it to attempt to enforcement. Whenever possible, statutes should be construed to avoid needless absurd consequences, injustice, or great inconvenience. Moore v. Given (1884), 39 Ohio St. 661, paragraph one of syllabus. Accordingly, we conclude that the proper interpretations of R.C. 2925.03(L) and 2925.13(D)(5) permit an offender to file an affidavit of indigency before the journal entry revoking his probation and reimposing sentence is filed. Cf. Gipson, 80 Ohio St.3d 626, syllabus.
Having reached this conclusion, we must consider whether Cochran's trial counsel gave inadequate assistance when he failed to submit an affidavit of indigency before the judgment reimposing Cochran's jail sentence was entered. In reviewing trial counsel's failure to file an affidavit of indigency, ineffective assistance may be found if the record reveals a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine. See State v. Williams (1995), 105 Ohio App.3d 471,482; State v. Stearns (Oct. 9, 1997), Cuyahoga App. No. 71851, at 3; State v. Huffman (Jan. 26, 1995), Cuyahoga App. No. 63938, unreported, at 5. Because information regarding an appellant's finances would most often lie outside the record on direct appeal, the appropriate place to pursue this question will generally be in a hearing for post-conviction relief under R.C. 2953.21. SeeState v. Booker (1989), 63 Ohio App.3d 459, 466.
Nevertheless, there is enough indication of Cochran's inability to pay this fine in the record before us that we believe a remand is warranted, for the sole purpose of determining whether the mandatory fines will be imposed under R.C. 2925.03(L) and2925.13(D)(5). We note that appellant was represented by a public defender. Thus, there was necessarily a determination made that he was indigent under Chapter 120 of the Revised Code. We recognize that there is a difference between indigency for the purposes of receiving appointed counsel and inability to pay a mandatory fine. See Powell, 78 Ohio App.3d at 789. Nevertheless, that difference does not make the prior determination entirely irrelevant to the question of whether the record shows a reasonable probability that the trial court would have found Cochran indigent. See, e.g., State v. Ragland (Jan. 12, 1994), Clark App. No. 2965, unreported, at 2; Joy, supra, at 3; Creech,supra, at 6. It is reasonable to conclude that, where an offender was indigent for the purposes of receiving appointed counsel but now faces a $6,500 fine and five years of incarceration, he could have proven himself indigent under R.C.2925.03(L) and 2925.13(D)(5), had he submitted a proper affidavit of indigency.
Consequently, we sustain Cochran's second assignment of error. To the extent that his trial counsel failed to submit an affidavit of indigency when Cochran faced reimposition of his sentence, Cochran was deprived of effective assistance of counsel. The case should be remanded so that Cochran may file an affidavit of indigency and the court may determine whether he is unable to pay his fines under R.C. 2925.03(L) and 2925.13(D)(5). SeeRagland, supra, at 2.
 IV.
In his third assignment of error, Cochran asserts that the trial court violated due process by imposing consecutive terms of imprisonment for allied offenses of similar import. For offenses to be allied, however, they must necessarily derive from the same conduct. R.C. 2941.25. Here, Cochran was charged with committing three separate crimes on three different occasions. Thus, this assignment of error is without merit and is overruled.
 V.
With his fourth assignment of error, Cochran argues that his consecutive sentences constitute cruel and unusual punishment. "It is not a cruel and unusual punishment for a defendant to be sentenced to consecutive terms for separate statutory crimes."State v. Wilkinson (1969), 17 Ohio St.2d 9, paragraph three of syllabus, certiorari denied (1969), 395 U.S. 946, 89 S.Ct. 2020,23 L.Ed.2d 465. Cochran's fourth assignment of error is overruled.
 VI.
In his fifth assignment of error, Cochran asserts that he received ineffective assistance of counsel. He argues first that his counsel should have asked for conditional probation. Cochran was actually granted probation, however, and violated it. Thus, this argument is meritless. Cochran also argues that his trial counsel should have objected to the imposition of consecutive sentences for allied offenses of similar import. We have, however, already rejected Cochran's contention that the consecutive sentences were improper. Accordingly, we overrule this assignment of error.
 VII.
In his sixth assignment of error, Cochran claims that the trial court erred when it denied his request for resentencing according to the law after S.B. 2 took effect on July 1, 1996. Cochran's crimes, his sentencing, and the reimposition of his sentence all occurred before that date. S.B. 2 does not apply retroactively. State ex rel. Lemmon v. Ohio Adult ParoleAuthority (1997), 78 Ohio St.3d 186, 187-88. The sixth assignment of error is, therefore, overruled.
 VIII.
In his seventh, and final, assignment of error, Cochran contends that the court should have granted him an additional 230 days of jail-time credit. Cochran claims that the time he served in lieu of bail (115 days) should be credited against all three of his sentences independently. In essence, Cochran seeks treble credit against his aggregate sentence. Credit for time served in Ohio does not operate this way. A prisoner receives credit against the "total number of days of his confinement." R.C.2967.191; see also State ex rel. Spikes v. Court of Common Pleas
(July 18, 1997), Lake App. No. 96-L-215, unreported, at 2. Accordingly, we overrule Cochran's seventh assignment of error.
Because we have affirmed appellant's first and second assignments of error, the judgment of the trial court is reversed and remanded for reconsideration of the mandatory fines imposed, pursuant to R.C. 2925.03(L) and 2925.13(D)(5), and for modification of the driver's license suspension in conformity with this opinion. In all other respects, the judgment of the trial court is affirmed.
Judgment affirmed, in part, reversed, in part, and remanded.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Stephen A. Schumaker
Mark M. Feinstein
Richard Cochran
Hon. Richard J. O'Neill
[1] Because Cochran was sentenced before July 1, 1996, the statutory provisions relevant to his case were those that were in effect before that date. R.C.2925.03(G) and 2925.13(D)(1) would now govern the imposition of driver's license suspensions for a drug offender in Cochran's position. Although recodified, the terms of the provisions have remained essentially the same.
[2] These were the applicable statutes at the time the sentence was imposed. Currently, imposition of mandatory fines for drug offenses is governed by R.C. 2929.18.