{¶ 1} Defendants-appellants, Ronald G. Winkler and Wilma M. Winkler, appeal separate but related decisions of the Monroe County Common Pleas Court finding them in contempt of court concerning the restoration and maintenance of an easement that runs across their property owned by plaintiffs-appellees, Lee J. Bayersdorfer and Cathy A. Bayersdorfer.
 {¶ 2} On January 10, 2000, appellees filed suit against appellants alleging that appellants had interfered with the use of an easement. The easement was created by a judgment decree entered in the Monroe County Common Pleas Court on May 20, 1985. Appellants and appellees are successors in interest to the parties to that decree. The easement is essentially a driveway that runs across appellants' pasture field where livestock are kept. The easement provides appellees' access from their house to the nearest main road. Appellees alleged that a dispute had arisen between the parties concerning the location and width of the easement. They also alleged that appellants' livestock obstructed their use of the easement, as well as causing damage to it which appellants would not agree to repair. Appellees sought an order restraining appellants from further interfering with their use of the easement. The trial court granted a temporary restraining order that same day.
 {¶ 3} After a hearing on January 19, 2000, the trial court ordered the temporary restraining order would continue with certain modifications. The court noted that the parties agreed to secure estimates for the minimum remedy necessary to fill ruts which existed in the easement which impeded fuel deliveries to appellees' home. Appellants were granted permission to install two lines of electric fence in order to permit the grazing and pasturing of their livestock. Appellants were also advised to allow emergency vehicles access to appellee's home.
 {¶ 4} On September 27, 2000, appellants filed their answer setting forth a general denial and the defense of res judicata based on the May 20, 1985 judgment decree. In the alternative, appellants sought clarification of the May 20, 1985 judgment decree affixing the parties' rights and responsibilities with regard to the easement.
 {¶ 5} The court held a hearing on the matter on September 29, 2000. Based on ambiguities existing in the enforceability provision of the May 20, 1985 judgment decree, the court decided to revisit the issue of the easement in its entirety. The court ordered the parties to submit dimensions and costs for consideration in arriving at a final resolution of the issue of the easement on or before October 6, 2000.
 {¶ 6} On October 10, 2000, the court filed a judgment entry setting forth the exact location and dimension of the easement by reference to a recorded deed. Concerning maintenance of the easement, the court assigned 80 percent of the costs to appellees and 20 percent to appellants and set forth specific procedures for resolving payment. The court noted that, because the parties were unable to reach an agreement in the past, the easement had fallen into disrepair. The court ordered that costs incurred in restoring the easement to useable condition be paid 60 percent by appellees and 40 percent by appellants. The court assigned exclusive responsibility for determination of the costs required to complete the restoration to appellees and requiring appellants to pay their share upon receipt of invoices from appellees.
 {¶ 7} On February 8, 2001, appellees filed a motion for contempt, temporary restraining order, and other relief. Appellees alleged that appellants violated the court's October 10, 2000 judgment entry. Appellees requested a temporary restraining order requiring appellants to restore the temporary easement previously granted by the October 10, 2000 judgment entry, prohibiting them from feeding livestock within one hundred feet of the easement, and prohibiting appellants from using the easement until the permanent easement could be restored by appellees. The court granted the temporary restraining order the following day.
 {¶ 8} Following a hearing on appellees' contempt motion, the trial court filed a judgment entry on February 28, 2001, setting forth an agreement reached by the parties. The contempt motion was continued for sixty days and the October 10, 2000 order was modified in certain respects, including an adjustment to the location of the easement. The entry also stated that appellants agreed that their cattle would not be fed within one hundred feet of the easement. Additionally, the entry addressed the agreement concerning the restoration of the easement as follows:
 {¶ 9} "The plaintiffs [appellees] shall select a contractor to do the work previously stated in this court's prior entry of October 10, 2000. If the costs of said contractor exceeds the estimate previously given by Mr. Smigill, then the defendants [appellants] shall be exclusively responsible for said costs. The plaintiffs [appellees] shall be receptive to any proposals the defendants [appellants] shall make regarding possible contractors who are willing to do the work at a reasonable cost. However, the plaintiffs [appellees] shall have the final say regarding the selection of the contractor." (Footnote omitted; emphasis sic.)
 {¶ 10} In the meantime, appellees hired Airedale Trucking to restore the easement at a cost of $19,188.94. Appellees attempted to serve appellants with a bill for their share of the restoration costs by certified mail beginning on May 8, 2001. Delivery was attempted three times, each time being returned as unclaimed.
 {¶ 11} On June 25, 2001, appellants filed a motion for relief from prior court order. Appellants stated that substantial problems were created by the hiring of the contractor to do the repair work. Appellants attributed these problems to appellees claiming they were intentional and deliberate in their effort to harm them. Appellants asserted that there were contractual issues which remained to be litigated prior to any findings by the court. Lastly, appellants asked that the court hear evidence on the efforts to get the work done prior to upholding findings from the previous hearings.
 {¶ 12} The court conducted a hearing on both parties' motions on June 29, 2001. On July 9, 2001, the court filed a judgment entry finding that appellants were not in contempt of the prior orders and denying appellants' motion for relief from prior court order. The court ordered that the parties cooperate with the construction of a fence along the entire length of the easement. The court also ordered that appellants pay appellees $10,843.25 representing their share of the restoration costs (plus accrued interest). Appellants appealed that decision to this court and it was assigned Case No. 860.
 {¶ 13} On February 11, 2002, appellees filed another motion for contempt alleging that appellants had violated the court's October 10, 2000 and July 9, 2001 orders. Appellees claimed that appellants were obstructing repairs to the permanent easement. Following a hearing, the court, on April 10, 2002, found appellant Ronald G. Winkler (Winkler) in contempt of the court's July 9, 2001 order. The court fined Winkler $250 and sentenced him to thirty days in jail.
 {¶ 14} On April 12, 2002, Winkler's attorney filed in this court a verified petition for writ of habeas corpus seeking Winkler's release. He claimed that the trial court was without jurisdiction to hear the contempt motion because the July 9, 2001 order had been appealed.
 {¶ 15} On April 17, 2002, Winkler filed an application to purge contempt. That same day, the court ordered Winkler's release on the condition that Winkler pay the $250 fine and the $11,586.20 representing their share of the restoration costs (plus accrued interest) to the clerk to be held pending final adjudication made by this court. The court also ordered that Winkler construct the fence as previously ordered thirty days after final adjudication by this court. Noting this development, this court dismissed Winkler's petition for writ of habeas corpus as moot.
 {¶ 16} On May 8, 2002, Winkler appealed the trial court's April 10, 2002 judgment entry and the case was assigned No. 871. On July 1, 2002, this court consolidated case Nos. 860 and 871.
 {¶ 17} For case No. 860, appellants raise two assignments of error. Appellants' first assignment of error states:
 {¶ 18} "The Trial Court Abused Its Judicial Discretion By Ordering The Servient Landowner To Build A Fence Around The Dominant Landowner's Easement."
 {¶ 19} Appellants readily acknowledge that the easement gives appellees the unrestricted right for ingress and egress with all the attendant rights necessary to the reasonable and proper enjoyment of the easement. However, appellants argue that they, as owners of the land subject to the easement, are not required to erect a fence along the easement.
 {¶ 20} The owner of land that is subject to an easement has the right to use the land in any manner not inconsistent with the easement. However that owner has no right to interfere with the reasonable and proper use of the easement or obstruct or interfere with the use of the easement. Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC (2000),138 Ohio App.3d 57, 740 N.E.2d 328; Columbia Gas Transm. Corp. v.Bennett (1990), 71 Ohio App.3d 307, 594 N.E.2d 1; Rueckel v. Texas E.Transm. Corp. (1981), 3 Ohio App.3d 153, 3 OBR 172, 444 N.E.2d 77;Roebuck v. Columbia Gas Transm. Corp. (1977), 57 Ohio App.2d 217, 11 O.O.3d 256, 386 N.E.2d 1363.
 {¶ 21} In this case, the trial court was presented with ample evidence that appellants' livestock were causing significant damage to the easement by continually walking along it and crossing over it. The damage made it difficult for appellees to utilize their right of ingress and egress. Therefore, appellants interfered with the reasonable and proper use of the easement. Since it was appellants' fault (i.e., their livestock) that appellees could not enjoy the use of their easement, it was reasonable for the trial court to require appellants to construct a fence along the easement so their livestock would not cause damage to it.
 {¶ 22} Accordingly, appellants' first assignment of error is without merit.
 {¶ 23} Appellants' second assignment of error states:
 {¶ 24} "The Trial Court Abused It Judicial Discretion By Ordering Payment Of $10,550.00 Plus Interest From Defendants To Plaintiffs Without Judicial Review Of The Reasonableness Of The Amount."
 {¶ 25} In its October 10, 2000 judgment entry, the trial court ordered that the costs incurred in restoring the easement to useable condition be paid 60 percent by appellees and 40 percent by appellants. Also, the court stated that appellees were exclusively responsible for determination of the costs and workmen required to complete restoration of the easement. Subsequently, appellees got an estimate from Joe Smigill (Smigill) of Precisions Services for $14,397.13.
 {¶ 26} When appellants allegedly interfered with the restoration process, appellees filed a motion for contempt. Also, due to the dispute that had escalated between the parties, Smigill declined to do the restoration work. A hearing was held on appellees' contempt motion on February 23, 2001. At the hearing, the parties agreed that appellants would be solely responsible for the additional restoration costs that might be associated with having to find another contractor. In its February 28, 2001 judgment entry, the court stated that parties' agreements as follows:
 {¶ 27} "The plaintiffs [appellees] shall select a contractor to do the work previously stated in this court's prior entry of October 10, 2000. If the costs of said contractor exceeds the estimate previously given by Mr. Smigill, then the defendants [appellants] shall be exclusively responsible for said costs. The plaintiffs [appellees] shall be receptive to any proposals the defendants [appellants] shall make regarding possible contractors who are willing to do the work at a reasonable cost. However, the plaintiffs [appellees] shall have the final say regarding the selection of the contractor." (Footnote omitted; emphasis sic.)
 {¶ 28} Appellants argue that they never agreed to pay the $10,550.00. At the February 23, 2001 hearing on appellee's contempt motion, counsel for appellee stated the agreement as follows:
 {¶ 29} "Again, the parties will discuss — and of course, the court order says the Bayersdorfers [appellees] have the right to select a contractor — they will do so to complete the work. If there is a cost to do the work about that given by Mr. Smigill, the sole responsibility also of the Winklers [appellants]." (Tr. 6.)
 {¶ 30} Counsel for appellants responded later with the following:
 {¶ 31} "MR. BURTON: There was another bid on this project that was excessive in our opinion, and although we agree to be responsible for the costs above the gentleman mentioned, it's my understanding we are going to be able to suggest people to the plaintiffs that we have contacted that are at least reasonable in their approach.
 {¶ 32} "So I'm not willing to say that we're going to pay ten thousand —" (Tr. 7-8.)
 {¶ 33} Appellants' argument is not supported by the record. Smigill's estimate was $14,397.13. 40 percent (appellants' share) of that is $5,758.85. The actual cost of the restoration as completed by Airedale Trucking was $19,188.94. The difference between the actual cost and Smigill's estimate is $4,791.81. Added together, appellants' share of the restoration costs came to $10,550.66. Therefore, only the $4,791.81 difference in the two estimates represents the additional amount appellants agreed to pay. Additionally, as the court made clear, it was appellees' primary prerogative to choose the contractor. Appellants have presented no evidence indicating that this selection was unreasonable. Also, there is no evidence to suggest that appellees deliberately sought a higher bid. Of the four estimates that appellees were able to obtain, including Smigill's, appellees settled on the next highest estimate offered by Airedale Trucking. The next two higher estimates were for $32,861.00 and $36,500 respectively. Also, appellees had to incur the additional costs associated with taking out a home improvement loan of $12,000 when it became apparent that appellants were not going to pay their share of the restoration costs.
 {¶ 34} Appellants also argue that the trial court abused its discretion at the June 29, 2001 hearing by not allowing appellants to bring up the amount of money involved or to challenge the efficacy of the people hired or the work done. This argument is also not supported by the record. One of the two primary issues dealt with at the hearing was appellants' refusal to pay their share of the restoration cost. Appellant Winkler indicated his continuing refusal to pay their share based on his dissatisfaction with the work as it was completed. He also admitted to never having offered any alternative proposals to appellees. Appellants' counsel indicated there was one proposal forwarded by him to counsel for appellees. However, the contents of that proposal were never testified to and the proposal itself was not offered into evidence. In contrast, appellees testified concerning four estimates that they had obtained and each were offered into evidence without objection.
 {¶ 35} Accordingly, appellants' second assignment of error is without merit.
 {¶ 36} For case No. 871, appellants raise one assignments of error which states:
 {¶ 37} "The Trial Court Erred In Using The Contempt Provisions To Enforce A Payment Of Money."
 {¶ 38} Appellant Winkler cites Section 15, Article I of the Ohio Constitution which states:
 {¶ 39} "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud."
 {¶ 40} This provision has been applied to money obligations arising upon contract, express or implied, and judgments rendered thereon, so as to prohibit imprisonment for debt in civil actions. SecondNatl. Bank v. Becker (1900), 62 Ohio St. 289, 56 N.E. 1025, paragraph one of the syllabus. See, also, Strattman v. Studt (1969), 20 Ohio St.2d 95,253 N.E.2d 749. This provision has also been applied to child support cases to preclude an obligor from being imprisoned in a civil contempt proceeding for failing to pay child support arrearages, where the amount of arrearages owed was reduced to a lump-sum money judgment and the child had reached the age of majority. Bauer v. Bauer (1987), 39 Ohio App.3d 39,41, 528 N.E.2d 964.
 {¶ 41} In this case, the trial court did not abuse its discretion when it jailed appellant for contempt. Appellant was found in contempt for a variety of reasons including violating the previous orders to keep his livestock away from the easement, for failing to construct the fence, and for generally obstructing appellees' use of the easement.
 {¶ 42} Additionally, this assignment of error is moot since appellant Winkler was released from jail and appellants deposited the money owed with the clerk and will presumably be released to appellees upon adjudication of this appeal.
 {¶ 43} Accordingly, appellants' sole assignment of error under this appeal is without merit.
 {¶ 44} The judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite and DeGenaro, JJ., concur.