JOURNAL ENTRY AND OPINION
Defendant-appellant Robert Annotico appeals from his convictions for one count of possession of cocaine, a schedule II drug, in excess of 25 grams, but less than 100 grams (R.C. 2925.11) and one count of possession of criminal tools (R.C. 2923.24) entered after a jury trial. Defendant contends that the evidence was insufficient to sustain the conviction; the judgment was against the manifest weight of the evidence; counsel was ineffective; the trial court erred in sentencing him; and that the trial court erred in imposing a $19,000 fine. We affirm the convictions, but remand for resentencing.
Defendant and his co-defendant, Sheri Rigor, were tried together. The following facts were introduced at trial.
Ronald James Loftis testified that he was arrested with the defendant and co-defendant Rigor. Loftis pled guilty in exchange for his testimony. Loftis stated that he met the defendant and co-defendant more than a year earlier at a party where they were smoking drugs together. He said that on the night in question, the defendant and co-defendant picked him up at his house located on East 64th and Woodland so that they could smoke drugs together. According to Loftis, the defendant and the co-defendant brought the drugs with them. Loftis stated that he was sitting in the front passenger seat, defendant was driving and co-defendant Rigor was sitting in the back seat. According to Loftis, when the officers stopped the vehicle, co-defendant Rigor had the drugs on her person. Loftis claimed that he never possessed the drugs and only had a crack pipe on his person which he threw on the floor. Loftis denied that the drugs were his and admitted that he had several prior convictions for drug abuse.
Cleveland Police Officer Wilsman testified that he and his partner Matt Baeppler were on duty the night of April 14, 1997. They were patrolling the area of East 64th and Buckeye around 2:00 a.m. when he noticed a Jeep Cherokee traveling northbound on East 64th run a stop sign. The officers followed the vehicle, pulled it over and called for back up. Defendant was driving the car, Loftis was in the front passenger seat and co-defendant Rigor was in the back seat.
As the officers exited the patrol car and proceeded to approach the vehicle they saw co-defendant Rigor make a furtive movement. Since the officers suspected a weapon was involved they ordered everyone out of the vehicle with their hands up. The officers removed co-defendant Rigor first. At that time, Officer Wilsman overheard co-defendant Rigor ask Officer Potts what was happening. Officer Potts informed her that a female officer was on her way to conduct a pat down search to determine what Rigor had stuffed in her pants. Rigor then pulled out the bag of crack from her pants. Officer Wilsman recalls Rigor said something to the effect of He gave me this or My boyfriend gave me this or Somebody gave me this, but he could not recall the exact words. (Tr. at 183-184). At that point all the occupants were placed under arrest and the vehicle impounded.
When the vehicle was inventoried, a smaller bag of suspected crack cocaine was found in the glove compartment. Also found was a crack pipe under the driver's seat, and a broken crack pipe in the back seat. The jeep was registered in the name of co-defendant Sheri Rigor.
Officer Baeppler corroborated Officer Wilsman's testimony. He also added that the arrest occurred in an extremely high drug area. (Tr. at 243). He stated that when he asked the occupants of the car how they were related to each other, the defendant responded that he was Rigor's boyfriend. Officer Baeppler testified that a pager was taken from Rigor and that while he had custody of the pager it was going off incessantly. He called one of the numbers on the pager and the person at that number asked where Sheri was.
Officer Baeppler testified that he wrote up the police report regarding the arrests and that he wrote down that Rigor had said, they told me to hide this. He admitted he was not present when Rigor made the statement, but that is what he thought she said based on what the other officers told him. The officer stated that a total of three pagers were confiscated and that he did not attempt to ascertain to whom the pagers were registered. $129.00 was confiscated from the defendant.
Officer Terrence Potts testified that he responded to Officer Baeppler and Wilsman's call for back up. When he arrived on the scene he assisted the officers in getting co-defendant Rigor out of the vehicle. Officer Potts explained to Rigor that they were waiting for a female officer to conduct a pat down search of Rigor to determine what she stuffed down her pants. Potts stated that he then asked Rigor what it was that she had hidden and to take it out. She told the officer that it was not a gun and that He gave it to me. My boyfriend gave it to me. (Tr. at 202). At that point, she unzipped her pants and produced the bag of cocaine. Later, it was determined that defendant was Rigor's boyfriend.
After the trial court heard and overruled motions for acquittal by both defense attorneys, co-defendant Sheri Rigor took the stand in her defense. She stated that she had no prior convictions. According to Rigor, on the night in question she and defendant were at a bar on Denison Avenue and left shortly after midnight. She and the defendant had been dating for about three and one-half years. While at the bar they met up with Loftis, whose house she and defendant had been at many times. All three of them left the bar together and got into her jeep to go to Loftis' house. Although it was her vehicle, defendant drove. On the way to the house, Loftis yelled out that a police car was following them. She said that when the police pulled the car over, Loftis turned around in the front seat, threw a bag in her lap and screamed at her to hide it in her privates. Then Loftis continued to shuffle around in the front seat and Rigor heard the glove compartment open and close. Rigor denied that the pager that the officers found was hers. She claimed that she told the officers that the bag of drugs in her pants was given to her by Loftis. She denied ever telling the officers that the defendant was her boyfriend. She also denied that they ran a stop sign and contended that the police stopped them for no apparent reason.
Based on the above evidence, the jury found the defendant guilty of both counts. The trial court thereafter sentenced the defendant to nine years on the drug possession and one year for the possession of criminal tools, to be served consecutively. Defendant was also fined a total of $19,000.
Defendant now timely appeals assigning five assignments of error. We will address defendant's assignments of error in the order asserted and together where such discussion is appropriate.
 I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION.
 II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant argues that there was no evidence presented that he had actual or constructive possession of the drugs. He contends that he did not own the vehicle in which the drugs were found and that although he was driving the vehicle, there were two other people in the car with him. This assignment of error has no merit.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows in State v. Thompkins (1997),78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.).
A review of the transcript indicates that defendant did not have any drugs on his person when arrested. However, Officer Wilsman recalled Rigor saying at the scene that He gave me this or My boyfriend gave me this, or Somebody gave me this, without recalling the exact words. Officer Potts also testified that co-defendant Rigor had pulled the drugs out of her pants and told him He gave it to me. My boyfriend gave it to me. Defendant admitted that he was Rigor's boyfriend. Although Rigor claimed at trial that Loftis was the one who gave her the cocaine to hide, Loftis denied that he ever possessed any drugs in the car. This evidence was sufficient to establish defendant's control over the drugs as apparently the jury believed that the defendant gave the drugs to Rigor and instructed her to hide the bag. Although Rigor denied ever saying that her boyfriend gave her the drugs, it is well established that the weight given to the testimony and the credibility of the witnesses is within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of syllabus. Based on this testimony, we find the evidence was sufficient to sustain the convictions. Nor can it be said that the convictions were against the manifest weight of the evidence.
Assignments of Error I and II are overruled.
 III. APPELLANT'S DUE PROCESS RIGHTS WERE ABRIDGED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
The Ohio Supreme Court recently stated in State v. Calhoun (1999),86 Ohio St.3d 279 at 289, the standards to be applied in determining whether counsel's assistance was constitutionally ineffective:
 The United States Supreme Court has established a two-step process for evaluating an allegation of ineffective assistance of counsel:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.
 In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done. State v. Hester (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.
 On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; State v. Jackson, 64 Ohio St.2d at 110-111, 18 O.O.3d at 351, 413 N.E.2d at 822.
Defendant contends that counsel was ineffective for not obtaining a copy of the suppression hearing transcript which would have indicated that Officer Potts altered his testimony at trial. Defendant argues that at the suppression hearing the Officer testified that when he asked the defendant's girlfriend where she got the drugs she responded that they or he gave it to me. At trial the officer testified that the girlfriend told him that the defendant, who was her boyfriend, gave her the drugs. A review of the motion to suppress transcript indicates that Officer Potts did testify that Rigor told him that her boyfriend gave her the bag of drugs. The following colloquy occurred at the suppression hearing (Tr. at 36) on cross-examination:
 Q. At that point in time, she said, yes? She said, yes? Or what did she respond?
A. He gave it to me.
Q. I think you said they or he gave me something?
A. Right.
Q. Did she say who the he was?
 A. Her boyfriend, I believe, is how I remember her saying.
Therefore, counsel was not ineffective for failing to request a copy of the transcript from the motion to suppress hearing, as Officer Potts did not testify inconsistently.
Defendant also contends that counsel was ineffective for failing to request a copy of the police report which recorded the girlfriend's statement as, they told me to hide this. Although it was revealed at trial that the police report does record Rigor's statement as, they told me to hide this, Officer Baeppler testified that he wrote the police report and that he did not personally hear what Rigor had said. Instead, Baeppler was relying on statements by other officers in writing the report. Furthermore, it appears from the discussion had at sidebar that counsel was provided with a copy of the police report during discovery. (Tr. at 214, 220). In any event, even if counsel failed to request the written report, it was not prejudicial as counsel was adequately permitted to cross-examine the officer regarding the statement contained within the report.
Assignment of Error III is overruled.
IV. THE TRIAL COURT ERRED IN SENTENCING APPELLANT.
Defendant contends that the trial court erred in sentencing him to less than one year short of the maximum sentence as it was excessive in comparison to sentences imposed for similar offenses in other cases and contravenes public policy. He also argues that by ordering the drug offense count to be served consecutively with the possession of criminal tools count the trial court in essence ordered the maximum sentence.
Pursuant to R.C. 2953.08(G)(1):
 The court hearing an appeal of a sentence * * * may increase, reduce, otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds any of the following:
(a) That the record does not support the sentence;
In sentencing the defendant, the court should adhere to the overriding purposes of felony sentencing as set forth in R.C. 2929.11, which provides:
 (A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 (B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
In the case herein, the trial court sentenced the defendant to more than the minimum but less than the maximum time permitted by statute. A review of the sentencing hearing transcript indicates that the trial court determined that to sentence the defendant to less than what it ordered would demean the seriousness of the crime. The trial court also noted that defendant had a prior conviction for drug abuse and a prior conviction for domestic violence and that those prior convictions entered into its decision in determining the length of the sentence. Therefore, the trial court adequately stated on the record its reasons for imposing the length of each sentence and complied with the purposes of felony sentencing.
We also note, however, that since the defendant was sentenced to less than the maximum sentence that the trial court was not required to enter any findings as to the amount of time imposed for each sentence. R.C.2929.19(B)(2) only requires the court to make findings and give reasons for selecting a sentence imposed in five circumstances. State v. Hayes (Nov. 2, 2000), Cuyahoga App. No. 77491, unreported. None of those five listed circumstances are applicable to the defendant in this case, with the exception of the imposition of consecutive sentences which we will address later.
Although we recognize that the trial court essentially sentenced the defendant to one month less than the maximum for drug possession (ten years) by sentencing the defendant to one year shy of the maximum for drug possession and one month shy of the maximum for criminal tools and running them consecutively, this does not constitute the maximum sentence. To treat it as so would open the door to abuse as once we hold that one month less than the maximum should be treated as the maximum sentence we open the door to sentences that are below the maximum, i.e., two months less, a year less, etc. This would be in contravention of the legislature's intent in drafting S.B.2, as the legislature has not required findings when the sentence imposed for a non first time offender is less than the maximum and more than the minimum. State v. Hayes, supra. This Court in State v. Barnes (Aug. 10, 2000), Cuyahoga App. No. 76560, unreported, has even gone as far as holding that in such situations the defendant has no appeal as of right pursuant to R.C.2953.08. See, also, State v. Schott (July 29, 1999), Cuyahoga App. No. 75455, unreported, where we held:
 In this case, defendant-appellant entered a plea of guilty to failure to comply with order or signal of a police officer, a fourth degree felony. The possible sentence for a fourth degree felony is six to eighteen months. See, R.C. 2929.14(A). Defendant-appellant received a seventeen month sentence, less than the maximum eighteen months sentence the trial court could have imposed. Therefore, the trial was not required to state the reasons for its sentence on the record pursuant to R.C. 2929.19(B)(2)(d) (e), as the sentence at issue was not the maximum sentence that could have been imposed. See, State v. Clark, 1998 Ohio App. LEXIS 2689 (June 19, 1998), Greene App. No. 97CA26, unreported; State v. Varner, 1998 Ohio App. LEXIS 4707 (September 14, 1998), Stark App. No. 98CA0016, unreported. Based upon the foregoing considerations, this court cannot now say that the trial court abused its discretion in sentencing defendant-appellant to a term of imprisonment less than the maximum allowable sentence.
Id. at 5. Therefore, although we agree that it would be better practice for the trial court to set forth its reasons or findings in imposing the sentence, the current sentencing laws do not require it in this situation.[1]
We find, however, that the trial court did not adequately state its reasons for requiring the sentences to be served consecutively. Although the trial court stated that it would demean the seriousness of the offenses not to run the sentences consecutively, more findings are necessary in order to impose a consecutive sentence. R.C. 2929.14(E)(4) states:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offense while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.14 requires the court to make findings consistent with the statute. Because the trial court failed to make the required findings, we remand this matter to the trial court for resentencing of the defendant and the inclusion of such a finding if the court, after proper determinations, decides to impose consecutive sentences in this matter. See State v. Albert (Nov. 24, 1997), 124 Ohio App.3d 225, 230; State v. Beck (Mar. 30, 2000), Cuyahoga App. No. 75193, unreported; State v. Maynard (Mar. 16, 2000), Cuyahoga App. No. 75722, unreported.
Assignment of Error IV is sustained.
 V. THE TRIAL COURT ERRED IN IMPOSING $19,000.00 IN FINES WHERE THE COURT HAD FOUND APPELLANT TO BE INDIGENT.
Defendant contends that the trial court erred in imposing a $19,000 fine when the trial court thereafter found the defendant indigent for purposes of appeal. This assignment of error has no merit.
R.C. 2929.18(B)(1) states in pertinent part:
 If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.
In the case herein, no affidavit of indigency was filed with the trial court prior to sentencing and no objection was made to the fine at the time it was imposed. As this Court held in State v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675-78, unreported at 6:
 It is clear that the court should consider the impact a fine has on the offender, however, the court is required to consider such factors only if evidence is offered at the sentencing hearing. State v. Burkitt (1993), 89 Ohio App.3d 214, 229. Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal. Id. at 229. See, also, State v. Johnson (1995), 107 Ohio App.3d 723.
Therefore, since defendant did not file an affidavit of indigency before sentencing and failed to present any evidence at the sentencing hearing that he was unable to pay the fine and made no objection to the imposition of the fine, he waived any objection to the fine on appeal.
Assignment of Error V is overruled.
Judgment affirmed; remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's convictions have been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, P.J., CONCURS.
KILBANE, J., DISSENTS IN PART AND CONCURS IN PART. (SEE DISSENTING AND CONCURRING OPINION ATTACHED).
[1] We note the trial court failed to advise the defendant of mandatory post-release controls pursuant to R.C. 2929.14(F). However, since this omission was not raised as error on appeal, we will not address it.