OPINION
Defendant-appellant, Stephen C. Blanton, appeals his conviction in the Butler County Court of Common Pleas for burglary.
Appellant was indicted on a charge of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. The testimony given at appellant's jury trial revealed the following:
On July 12, 1998, appellant, David Bell, and Shane Strong met their friend, Jamie Crockett. They drove to the home of appellant's girlfriend, Lynn Terry, to visit. They joined in a party with other friends and appellant consumed some alcoholic beverages. Later that night, appellant and Strong told Crockett that they were going to the store to buy cigarettes.
The home of Crockett's grandmother, Edna Bluhm,[1] is located on Warwick Avenue. Tina Young, a neighbor who lives across the street from Bluhm's home, was sitting on her front porch smoking a cigarette at about 2:00 a.m. when she saw a car drive down the street. She testified that two boys exited the car and walked "up the street on the right-hand side and before they got to Edna Bluhms' [sic] house they crossed the street." Young saw the boys walk up to Bluhm's porch. According to Young, one boy "started banging on the door really loud" and the other boy paced back and forth. Then they walked down the porch steps and walked to the side to the back door of the home. Young testified that the boys "started messing around the window," and she called 911. Young testified that she left the porch for only a few seconds to make this call. When Young returned, she saw one of the boys walk by the back of the house and heard "a banging noise" and the sound of breaking glass.
Young testified that when the police arrived, the car in which the boys had traveled drove away. Although Young admitted that it was possible that someone else had entered the house that night without her knowledge, she explained that she had been outside on her porch several times for extended periods of time and had only seen the two boys.
Detective Mark Poppe of the city of Hamilton Police Department was acting as a patrol officer that night and responded to the 911 dispatch at about 2:10 a.m. Another officer arrived at about the same time, and the two officers approached the house together. Detective Poppe saw a white male, who was wearing a dark shirt and ball cap, exit the side-door. When the suspect saw the officers, he suddenly turned and walked back into the house. Detective Poppe called other police units to the scene to secure the perimeter of the house. Once the perimeter was secured, the police entered the house. Appellant and Strong were found in the house and were arrested.
Detective Sherry Marcum interviewed appellant and Strong and investigated the crime scene. She concluded that the back door screen was cut and its glass was broken to enter the house. Appellant had numerous cuts on his hands. A guitar was found lying on the floor. There was also glass and blood on the floor. In Bluhm's bedroom, a jewelry box had been dropped on the floor. A speaker had been disconnected from the entertainment center in the family room and had been dropped. Crockett told Detective Marcum that a knife found in the dining room had been in the possession of Strong or appellant at the party that night. No one gave the boys permission to enter the house. Bluhm reported that some pieces of jewelry were missing.
After reading appellant his Miranda rights, Detective Marcum interviewed him. Appellant stated that Strong, Bell, and he were on their way to the market to buy cigarettes when they realized it was closed and turned on Warwick Avenue. Appellant stated that as they were driving by Crockett's house, they saw kids at the front door and stopped to investigate. Strong and appellant exited the car and told Bell to wait for them. According to appellant, when they walked to the house the kid at the front door ran away. Appellant and Strong walked to the rear side-door and saw another kid inside, so they entered the house. Appellant claimed that when he stepped inside, a kid hit him and threw a guitar at him. Then Strong walked upstairs to turn on all of the lights. According to appellant's statement to Detective Marcum, appellant called Terry's house and asked Terry's father or brother to find Crockett to tell her that someone had burglarized her house. However, as soon as Crockett answered the phone the police arrived. Appellant stated that he had to drop the phone because he was being handcuffed. At the end of his statement, appellant mentioned that "there was an old lady across the street that saw the whole thing."
At trial, appellant maintained that he did not burglarize Bluhm's home and that he did not enter with criminal intent. Appellant testified that he only entered the home to confront the real burglars. Appellant testified that once he entered the home he was struck with a guitar. He testified that when he fell, he cut his hands on glass that was lying on the floor. Appellant further testified that he called Crockett and tried to talk to her on the phone but was only able to tell her that people had broken into the house before the police apprehended him.
During his testimony, appellant admitted that previously he had been convicted of petty theft. He also acknowledged that he had failed to appear at his bond revocation hearing for this case but claimed that he had not been notified of it. Appellant admitted that he attempted to hide from the police when they came to arrest him for his failure to appear.
At the conclusion of the trial, appellant was found guilty of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree. Appellant was sentenced to serve a three-year prison term and was ordered to pay restitution and a $1,000 fine. Appellant filed this appeal, raising three assignments of error.
Assignment of Error No. 1:
 THE CONVICTION FOR BURGLARY PURSUANT TO § 2911.12(A)(3) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
In his first assignment of error, appellant argues that there is not sufficient evidence to support his burglary conviction. In addition, appellant contends that his conviction is not supported by the manifest weight of the evidence.
The standard of review of a claim of insufficient evidence was established in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Appellant was convicted of burglary, a violation of R.C. 2911.12(A)(3), which states, "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * with purpose to commit in the habitation any criminal offense."
Reviewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the elements of burglary were proven beyond a reasonable doubt. Young observed two boys walk up to Bluhm's porch. She saw the boys banging on the door and walk to the back of the house. Then Young heard "a banging noise" and the sound of breaking glass. When the police responded to Young's 911 call, they secured the house and found appellant and Strong inside. The screen of the back door had been cut, and a knife belonging to one of the boys was found on the floor of the house. The glass of the back door had been broken, and appellant had numerous cuts on his hands. Bluhm's personal things had been thrown on the floor. Appellant and Strong did not receive permission to enter the house that night and the victim reported that pieces of jewelry were missing. A rational trier of fact reviewing this evidence could have concluded that appellant entered Bluhm's home without permission and with the intent to commit a crime. Therefore, we find that appellant's burglary conviction is supported by sufficient evidence.
The standard of review based upon the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
We find that appellant's burglary conviction is supported by the weight of the evidence. Although appellant testified that he did not burglarize the home or enter with any criminal intent, the jury, which was in the best position to judge the credibility of witnesses and the weight to be given the evidence, chose to disbelieve his testimony. Reviewing the record and weighing the evidence and the reasonable inferences, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE COURT ERRED IN FAILING TO CREDIT APPELLANT'S SENTENCE FOR THE DAYS HE SPENT IN JAIL FOR PRETRIAL INCARCERATION.
In his second assignment of error, appellant asserts that the trial court erred by failing to credit him with forty-four days of time that he claims he served at a juvenile detention facility prior to trial.
At appellant's sentencing hearing, the following exchange occurred:
 By Mr. Newland [appellant's counsel]: Your Honor just one question as far as the credit of time there may have been some of the time involved in the juvenile detention facility pending the relinquishment to adult Court I didn't know if that time was considered or factored in?
 By the Court: What dates are you referring to?
By Mr. Blanton: July 12 August 25.
 By the Court: Our records do not show that he was incarcerated with respect to these charges or on or for these charges. The Court's not inclined to give the defendant credit for those days. Let's see all right 88 days credit that will be all. Thank you.
The record that has been provided to us for appellate review does not demonstrate that appellant served any time in a juvenile detention center while awaiting trial for his burglary charge. Therefore, we have no basis upon which to credit appellant for any additional time against his sentence. The second assignment of error is overruled.
Assignment of Error No. 3:
THE COURT ERRED IN IMPOSING A FINE UPON APPELLANT.
 In his third assignment of error, appellant claims that the trial court erred by imposing a $10,000 fine upon him at sentencing. Appellant insists that the trial court's decision to impose the maximum fine allowed for this offense was improper where appellant was indigent.
Initially we note that although the trial judge stated at the sentencing hearing that he was imposing a $10,000 fine upon appellant, the "Judgment of Conviction Entry" orders appellant to "pay a fine of $1,000." "In Ohio a court speaks through its journal." State v. King
(1994), 70 Ohio St.3d 158, 162, quoting State ex rel. Worcester v.Donnellon (1990), 49 Ohio St.3d 117, 118. Therefore, we proceed with the understanding that appellant's fine is $1,000.
An appellate court may not increase, reduce, or otherwise modify a sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C.2953.08(G)(1)(a) and (d); State v. Garcia (1998), 126 Ohio App.3d 485,487. A court's sentence of an offender must be true to the purposes of felony sentencing: "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).
R.C. 2929.19(B)(6) states that "before imposing a financial sanction, the court shall consider the offender's ability to pay." This court has previously found that although the trial court must consider the offender's ability to pay, it need not hold a separate hearing on that issue. State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported, at 6. R.C. 2929.18(E) provides that a trial court "may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it." (Emphasis added.) A hearing is not required until the trial court decides to incarcerate an offender for failure to pay. State v. Meyer (1997),124 Ohio App.3d 373, 375; State v. Johnson (1995), 107 Ohio App.3d 723,728-29.
R.C. 2929.18(A) states in pertinent part that "the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section[.]" Appellant was convicted of R.C. 2911.12(A)(3), a felony of the third degree. Pursuant to R.C. 2929.18(A)(3)(c), a trial court may impose up to a $10,000 fine for a felony of the third degree. We find that the trial court's imposition of a $1,000 fine was in accordance with the purposes of felony sentencing and not contrary to law. The third assignment of error is overruled.
Judgment affirmed.
 ______________ VALEN, J.
YOUNG, P.J., and WALSH, J., concur.
[1] In the trial court transcript, the last name of Crockett's grandmother is spelled "Bluhm" in some instances and "Bloom" in others. For the purposes of this opinion, we adopt "Bluhm" as the proper spelling.